315 A.2d 750.

ROBERT J. MURRAY *vs.* RAYMOND S. GERVAIS.

MARCH 7, 1974.

PRESENT: Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The plaintiff in this negligence action seeks compensation for damages sustained as the result of a collision between his Volkswagen sedan and a two-door Pontiac sedan owned and operated by the defendant. A nonjury trial was held in the Superior Court. The trial justice found for the plaintiff and awarded him $20,000 in damages. In his appeal, the defendant takes no issue with the award but concentrates his fire on the liability phase of the suit, particularly the plaintiff's freedom from contributory negligence. Hereinafter we shall refer to the litigants by their last names.

Murray testified that during the late rainy evening hours of April 2, 1971 he was driving his Volkswagen in the city of Pawtucket along Weeden Street. He was headed in an

easterly direction toward the point where Smithfield Avenue meets and intersects Weeden Street. Traffic at this location is controlled by a stop light. The light was green for the Weeden Street vehicles. Murray insisted that he was through the intersection when he was hit from the left by Gervais as Gervais was attempting to turn from Weeden Street southerly onto Smithfield Avenue.

Gervais told a different story. He said that after proceeding westerly on Weeden Street, he came to a stop at the intersection preparatory to turning southerly onto Smithfield Avenue when he was struck by the Volkswagen. He pictured Murray as straddling the midline of the road as he was traveling easterly on Weeden Street.

Murray told the trial justice that the force of the collision drove the Volkswagen up against a utility pole which was located on the southerly sidewalk of Weeden Street just eight feet east of the easterly curb of Smithfield Avenue. He stated that Gervais's Pontiac was up against the Volkswagen and headed in a general south-westerly direction. Gervais maintained that the Volkswagen had not been pushed into the pole. However, a police officer who investigated the crash verified Murray's post-collision placing of the vehicles. One photograph shows damage to the Volkswagen beginning at the left front wheel and going all the way to the driver's door. Another photo shows a dented door on the passenger's side.

Before us, Gervais emphasized Murray's alleged failure to prove his due care in the operation of the Volkswagen. Gervais placed particular stress on the fact that at no time did Murray positively testify that as he drove along Weeden Street he was on his half of the road. Our examination of the transcript sustains Gervais's contention. However, there is evidence which gives rise to the inference that Murray was on his side of the roadway.

During cross-examination, Murray was asked to go to a blackboard[1] and diagram the crash area. Murray complied with this request and then was asked to indicate the location of the Volkswagen when he first observed the westbound Pontiac. Murray placed an "X" on the diagram indicating his point of initial observation. We cannot evaluate Murray's artistic ability because after he completed his testimony, Gervais took the stand, went to the blackboard, erased Murray's sketch and proceeded to give his graphic representation of how Murray hit him. The trial justice, however, saw both artists at work. We think it significant that at no time while Murray was at the easel was any charge made that his "X" was over on Gervais's half of Weeden Street.

After considering the testimony, the sketches, and the photographs of the damaged Volkswagen and of the intersection, the trial justice first classified Gervais's version of Murray's approach to the intersection as inherently improbable. He then found that the collision had occurred on Murray's side of Weeden Street. We see no reason whatsoever to disturb his findings. In essence, Gervais argues that his description of what caused the collision, rather than Murray's, should have been accepted as the more credible. Such an argument is for the trial court, not for this court. *Boudreau* v. *Holzer*, 109 R. I. 81, 280 A.2d 88 (1971); *Marstan Corp.* v. *Centreville Realty Co.*, 106 R. I. 36, 256 A.2d 26 (1969).

The defendant's appeal is denied and dismissed.

---

[1]We note that while the use of chalk in its application to the blackboard serves a valuable function at the trial-court level, it is of no use to this court unless it is somehow preserved in the record for appellate review. Here, defense counsel copied Murray's diagram on a piece of legal-sized paper, but failed to introduce such copy into evidence—it was marked for identification as an exhibit only, and, therefore, may not be considered by this court.

Mr. Chief Justice Roberts did not participate.

*Norman L. Grant,* for plaintiff.

*Angelo G. Rossi, Aaron Rickles,* for defendant.